UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WAYNE WRIGHT,

    Plaintiff,                                       Civil Action No. 09-CV-15014

vs.                                               HON. BERNARD A. FRIEDMAN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND REMANDING MATTER TO DEFENDANT FOR AN AWARD OF BENEFITS

This matter is presently before the court on Magistrate Judge Charles Binder's Report and Recommendation ("R&R"), recommending that the court dismiss the complaint due to plaintiff's failure to prosecute. No objections to the R&R have been filed. For the reasons stated below, the court shall reject the R&R and remand the matter to defendant for an award of benefits.

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking review of defendant's decision denying his application for Social Security disability insurance benefits. Although plaintiff was represented by counsel during the administrative proceedings, he commenced the instant action *pro se* and continues to represent himself. The court referred the matter to Magistrate Judge Binder who granted plaintiff's motion to proceed *in forma pauperis* and directed the United States Marshal to serve defendant with process. Attached to defendant's answer is a certified copy of the administrative record. Once the answer and record were filed, Magistrate Judge Binder issued a scheduling order requiring plaintiff to file a summary judgment motion within approximately 30 days, requiring defendant to file a response and cross-motion approximately 30 days thereafter, and

requiring plaintiff to file a reply brief within one week later. When plaintiff failed to file a summary judgment motion, Magistrate Judge Binder issued an order indicating that if plaintiff failed to do so by a new deadline, he would either recommend that the complaint be dismissed without prejudice for lack of prosecution or "deem the case submitted and ready for immediate determination" without the benefit of cross-motions for summary judgment. When plaintiff once again failed to file a summary judgment motion Magistrate Judge Binder issued the R&R now before the court, recommending dismissal of the complaint for lack of prosecution.

While Fed. R. Civ. P. 41(b) authorizes the court to dismiss an action for a plaintiff's failure to prosecute, dismissal is a drastic sanction generally reserved for cases "where there is a clear record of delay or contumacious conduct." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). Whether a *pro se* plaintiff's failure to file a summary judgment motion, contrary to a magistrate judge's order, can ever constitute such delay or misconduct may be debatable. However, no such delay or misconduct can be attributed to the plaintiff in a Social Security disability benefits case because he has no burden to do anything in order to obtain judicial review of the administrative decision except file a timely complaint. In *Kenney v. Heckler*, 577 F. Supp. 214 (N.D. Ohio 1983), a *pro se* plaintiff sought review of the denial of his application for such benefits. As in the present case, a magistrate judge issued a notice requiring plaintiff to file a summary judgment motion within 30 days and warning him that failure to do so might result in the case being dismissed for lack of prosecution. As in the present case, plaintiff failed to file a motion, the magistrate judge recommended dismissal for lack of prosecution, and neither party objected to this recommendation. The court rejected the recommendation and proceeded to review the record without the benefit of cross-motions for summary judgment, explaining as follows:

2

For the reasons that follow, this Court finds that failure to prosecute is not a proper basis for dismissal of a complaint seeking judicial review of the Secretary's decision denying Social Security benefits.

Judicial review of the denial of Social Security benefits is authorized by 42 U.S.C. § 405(g). Section 405(g) provides, in pertinent part, that:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by civil action ... brought within the district court of the United States for the judicial district in which the plaintiff resides .... As a part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decisions complained of are based. *The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment* affirming, modifying, or reversing the decision of the Secretary, with or without remand .... The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive .... (emphasis added).

Thus, an appeal to the district court from the Secretary's decision is instituted by the filing of a complaint, to which the Secretary must respond by filing a transcript of the record, including the evidence upon which the findings and decisions complained of are based. Once the complaint and a copy of the record are filed, the Court has before it all that is necessary to enter a judgment on the merits.

As was done in the instant case, the Court has the option, pursuant to L.Civ.R. 19.05, of referring the case to the Magistrate for a report and recommendation. Alternatively, the Court may review the record and reach its decision without the assistance of a Magistrate's report and recommendation. In either case, it is the Court's responsibility to make the final determination as to whether substantial evidence supports the Secretary's decision, or whether the hearing procedures were in accordance with due process.

When the case is referred to the Magistrate, the Magistrate

may, and customarily does, afford the parties an opportunity to file additional briefs or motions in support of their positions. Generally, the Magistrate issues an "order" directing the parties to file cross-motions for summary judgment within a specified time period. Although the filing of summary judgment motions or other supplementary materials is not required by § 405(g), this procedure has been used since it is beneficial to both the parties and the Court. Summary judgment motions give the parties an opportunity to define the issues and to argue the facts and law upon which they rely. At the same time, these motions aid the Court in focusing in on the pertinent portions of the transcript and understanding the positions of the parties.

The use of summary judgment motions in § 405(g) proceedings, however, is neither necessary nor technically correct. Summary judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may "look no further than the pleadings and the transcript of the record before the agency," and may not admit additional evidence. *Morton v. Califano,* 481 F. Supp. 908, 914 n.2 (E.D. Tenn. 1978); 42 U.S.C. § 405(g). Therefore, although summary judgment motions are customarily used, and even requested by the Court or Magistrate, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits.

In the instant case, the Magistrate ordered the plaintiff to file a motion for summary judgment within 30 days. In this "order" the Magistrate warned that "[f]ailure of plaintiff to file a timely motion may result in a dismissal for want of prosecution." The plaintiff did fail to file the motion or any other brief in support. Thus, the Magistrate recommended dismissal for failure to prosecute, without ever addressing the merits of the case.

The Magistrate's recommendation is without legal support. Accordingly, this Court holds that a complaint filed pursuant to 42 U.S.C. § 405(g), appealing the Secretary's final decision denying Social Security disability benefits, may not be dismissed for failure of the plaintiff to prosecute when the plaintiff fails to file a summary judgment motion as requested by the Magistrate. By so holding, this Court does not intend to approve of the plaintiff's neglect in failing to comply with the Magistrate's request. However, as § 405(g) does not require the filing of motions or briefs for the Court to render a

> decision on the merits, the failure to file such motions cannot be the basis of a dismissal for failure to prosecute. Stated another way, once the plaintiff has filed a complaint stating his grounds for appeal from the Secretary's decision, he has done all that is required of him by § 405(g). Further, once the Secretary has filed a transcript of the record, all that is required by § 405(g) of both parties has been done.
>
> Having found that the Magistrate's recommendation to dismiss for failure to prosecute is contrary to the law, this Court will proceed to review the record and render a judgment on the merits of the case.

*Id.* at 215-16.

The court finds this reasoning persuasive and adopts it in full. As indicated by the court in *Kenney*, the plaintiff in a Social Security disability benefits case is not required to file a summary judgment motion, and he cannot be sanctioned for failing to do so. All he is required to do is file a timely complaint seeking judicial review of the administrative decision, and the plaintiff in this case has done so. All the defendant is required to do is file an answer and a copy of the administrative record, and the defendant in this case has done so. The issues are joined and the matter is ripe for decision. Accordingly, the court shall reject Magistrate Judge Binder's recommendation to dismiss the complaint for lack of prosecution. Further, the court shall proceed to decide the matter without the benefit of cross-motions for summary judgment.

In reviewing a denial of Social Security disability insurance benefits, the court's role is limited under § 405(g) to determining whether defendant's decision is supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination, the court does not review the matter *de novo*, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's

5

decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the court may have decided the case differently in the first instance. If defendant's decision is not supported by substantial evidence, the court must remand the matter either for further administrative proceedings or for an award of benefits.

In the present case, plaintiff claims he has been unable to work since November 2004 because of severe, chronic pain in his back (Tr. 28, 31). The ALJ found that plaintiff has "lumbar degenerative disc disease and lumbar facet arthritis" (Tr. 15). He also found that plaintiff is unable to perform his past work as a counter clerk, salvage worker, road construction supervisor, roofer, sewer drain technician or carpet installer (Tr. 20), but that he can perform a limited range of unskilled,[1] light-level work (Tr. 20). Specifically, the ALJ found that plaintiff could work as a cashier, file clerk, child care worker, assembler, machine operator, inspector, administrative support-stock clerk, usher or attendant, and that several thousand such jobs exist in the State of Michigan (Tr. 21). On this basis, the ALJ concluded that plaintiff is not disabled.

The medical records indicate that plaintiff's back pain began in 1994 when he was involved in a rollover car accident, fractured a vertebra, and was placed in a body cast for a year (Tr. 195). He has sought medical treatment for back pain ever since. At the administrative hearing, plaintiff testified that his back pain is constant, that on a "good day" his pain is an "8" on a ten-point scale, that he can do practically nothing except lie in a reclining chair or in bed, and that he cannot shower or get dressed without assistance from his wife (Tr. 31-35). Plaintiff testified that he takes

---

[1] The ALJ found both that plaintiff "*has not acquired* work skills from past relevant work" and that plaintiff "*has acquired* work skills from past relevant work that are transferable to other occupations" (Tr. 20, findings 8 and 9) (emphasis added). For present purposes this contradiction may be disregarded, as the jobs the ALJ found plaintiff capable of performing plainly are unskilled.

various medications, including morphine and Vicodin, and that "[t]hey make me real tired and all I do is sleep" (Tr. 32).[2] Plaintiff estimated that he can sit for five to ten minutes, stand five to six minutes, and walk from his house to the mailbox and back (Tr. 39). He indicated he cannot bend over, that he could walk up "maybe two" stairs, and pull at most an empty trash can from the road (Tr. 40).

The vocational expert was asked to assume a hypothetical person who can perform light work with various restrictions regarding climbing, balancing, stooping, crouching, kneeling and crawling and, in the case of the final hypothetical, offering a sit/stand option. As noted above, the vocational expert identified several thousand unskilled, light-level jobs which would accommodate these restrictions at this exertional level. On cross-examination, the vocational expert testified that if plaintiff needed to rest for two or more hours per day, in addition to regularly scheduled breaks, this "would be work preclusive" (Tr. 47).

The medical records show that plaintiff has sought treatment regularly for his back pain over the years, but that the pain has not lessened.[3] In 2005-2007 plaintiff was treated by Dr. Donald Hardman at the McLaren Ambulatory Care Center (Tr. 175-86, 215-21). These records indicate plaintiff complained of "severe pain in the low back, aggravated by any movement" (Tr.

---

[2] In his Disability Report, plaintiff indicated that he takes a muscle relaxer (Cyclobenzaprine) and six pain medications (Hydrocodone, Ibuprofen, Lavinzal, Lyrica, Methyprednisolone, and Nabumetone), several of which make him feel "light headed" (Tr. 167). Medical records from June 2008 indicate plaintiff takes Vicodin, Flexeril, Motrin, aspirin, Prilosec and Prozac (Tr. 290).

[3] The court notes that many of plaintiff's medical records predate his alleged disability onset date, while some others post-date the expiration of his insured status in June 2007 (*see* Tr. 15, finding 1). In this opinion, the court will comment only on those records dating from the time period closely preceding the onset date and continuing until 2007.

179). On examination, plaintiff's low back was tender and pain was elicited with flexion, extension or rotation (Tr. 176, 177, 179, 181, 216-19). Plaintiff was diagnosed with chronic low back pain and prescribed Vicodin, Flexeril, Motrin, Avinza (morphine), Lyrica, Medrol, Toradol and Cyclobenzaprine (Tr. 175-81, 186, 215-19).

An MRI of plaintiff's lumbar spine in September 2005 showed "[d]isc bulge with mild spondylosis and facet disease cause mild left L4-L5 and mild to moderate bilateral L5-S1 neural foraminal narrowing" (Tr. 174). The reader's impression was "[m]ild desiccation with posterior annular tear, bulge, and facet disease at L5-S1 causing mild to moderate bilateral L5-S1 neural foraminal narrowing, but no significant post-traumatic LS HNP or spinal stenosis" (Tr. 174). X-rays in November 2005 showed "mild degenerative changes in the lumbar spine and visualized lower thoracic spine" (Tr. 173).

In September and October 2005, plaintiff was treated by Dr. Rama Rao for pain management (Tr. 304-307).[4] Plaintiff complained of chronic pain in his back and neck and indicated his "[p]ain increases with coughing, physical activity, sitting and standing. Pain is burning, throbbing and shooting. It is associated with numbness and muscle spasms" (Tr. 304). On examination, Dr. Rao found: "Straight leg raising was negative bilaterally. Musculoskeletal – good lumbar spine flexion and extension with minimal restriction. No paraspinal muscle spasms identified in the neck area. Tenderness over the bilateral occipital area present" (Tr. 305). Dr. Rao diagnosed chronic low back pain, lumbar radiculopathy, cervical spondylosis, myofascial pain and bilateral sacroiliitis (Tr. 305). One week later, based on the September 30, 2005, MRI, Dr. Rao's

---

[4] Plaintiff also saw Dr. Rao in January and February 2009 and received epidural steroid injections (Tr. 297-303). However, because plaintiff's insured status expired in June 2007 (Tr. 15) the court will not summarize these records.

assessment was lumbar radiculopathy, lumbar degenerative disk disease and bilateral sacroiliitis (Tr. 306). He gave plaintiff bilateral sacroiliac joint injections (Tr. 306-07).

In January 2006 plaintiff was referred by his treating physician, Dr. Hardman, to a neurosurgeon, Dr. Hugo Lopez Negrete, for consultation (Tr. 186). Dr. Negrete noted that according to plaintiff "[t]he pain is aggravated by activities such as sitting, standing, walking, bending forward and backward. The pain is relieved by pain medication and muscle relaxants. Exercise, physical therapy, bed rest and epidural injections provided no relief" (Tr. 186). On examination, Dr. Negrete found:

> The patient has a . . . [l]umbar lordosis, the range of motion is painful and decreased on forward flexion mostly and on extension or lateral flexion or rotational movements. There is focal tenderness on the paraspinal bilateral at L3, L4 and L5, and tenderness of the sciatic notch and the sciatic trunk, no exquisite tenderness noted.

(Tr. 187; ellipsis in original.) Dr. Negrete commented that the September 2005 MRI "is normal except mild degenerative disc disease no herniated disc seen" (Tr. 187). Dr. Negrete's impression was "[l]ower back pain etiology unknown" and he indicated that "[l]ikely pain will not improve with anything we offer to him" (Tr. 187).

In March and April 2006, plaintiff was treated by Dr. Joseph Paese at the Knee & Orthopaedic Center (Tr. 191-97). Plaintiff complained of "severe spasm" and rated his back pain as an "8" or "9" on a ten-point scale (Tr. 195). He told Dr. Paese that he had obtained no relief from a series of four epidural injections in August and September 2005, that physical therapy had provided no lasting relief, and that he "is unable to do heavy labor, lifting, bending or standing for any length of time because of pain and discomfort" (Tr. 195). On examination, Dr. Paese found

> severe, severe [sic] myospasm of the erector spinae muscles, limited range of motion due to this fact with the inability to perform any

9

> orthopedic testing of the lumbar spine due to pain and discomfort.
> Straight leg raise is positive bilaterally for low back pain at
> approximately 20 to 30 degrees, both right and left. Deep tendon
> reflexes are diminished at the Achilles on the right.

(Tr. 195.) Dr. Paese diagnosed myospasm lumbar, facet syndrome lumbar, enthesopathy lumbar, lumbago, and mild spondylosis facets L3-4, L4-5 and L5-S1 (Tr. 196). He scheduled plaintiff for "facet injections to the lumbar spine to help nerve block the facet joints, reducing pain and discomfort and reducing spasm" (Tr. 196). He also prescribed a lumbosacral elastic back brace.

Plaintiff next saw Dr. Paese in July 2006 (Tr. 277). Plaintiff complained of "sharp," "constant" back pain, which he rated a "9" on a ten-point scale. Dr. Paese noted the history of plaintiff's automobile accident in 1994, including "body cast 1 yr," fracture at T-12, fracture of the cervical spine, and "severe back pain since then" (Tr. 277). He diagnosed "degenerative disc lumbar/sacral," "facet syndrome," "sciatica" and "lumbago/myofacitis low back" and prescribed morphine and Vicodin (Tr. 277). Dr. Paese also ordered another MRI of plaintiff's lumbar spine.

The MRI, which was done in August 2006, was interpreted as follows: "Findings of mild lumbar degenerative disc disease and spondylosis, changes greatest at L5-S1, however spinal stenosis or disc herniations are not confirmed" (Tr. 286). The MRI also showed "[m]ild facet degenerative changes are present at L5-S1, left greater than right and L4-L5, left greater than right" (Tr. 285). A bone scan, also done at Dr. Pease's request, was normal (Tr. 287).

In September 2006 Dr. Paese noted plaintiff continued to complain of "significant back pain" in the L4-5/S1 area, rating the pain as sharp, fairly constant, and as an "8" on a ten-point scale (Tr. 273). Plaintiff indicated "that he needs to walk bent over to relie[ve] this discomfort." Dr. Paese noted plaintiff was "still taking a significant amount of narcotics to relieve his discomfort" (Tr. 273). Based on the MRI, Dr. Paese diagnosed "[d]egenerative joint disease with facet arthritis

10

L4-5, L5-S1" and "[l]umbago" (Tr. 273). Notes from October 2006 included the diagnosis of "myospasm" (Tr. 274).

On this record, the ALJ concluded that plaintiff is not disabled because he has the residual functional capacity to perform the limited range of unskilled, light-level work noted above. This conclusion is not supported by substantial evidence for at least two reasons.

First, the ALJ has failed to explain why he found plaintiff's hearing testimony to lack credibility. Clearly, plaintiff must be deemed disabled if his testimony is credited, as he testified that he is unable to sit, stand or walk for more than a few minutes at a time and that he can do very little besides lie in a reclining chair or bed to relieve his back pain. Yet a clearly explained adverse credibility finding is absent from the ALJ's decision. To the extent such a finding exists, it appears to be summarized in the following contradictory sentence:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 20.) In the same breath the ALJ found plaintiff to be both credible and not credible. The "alleged symptoms," as described by plaintiff, are "reasonably [to] be expected" from his medically determinable impairments" and, at the same time, plaintiff's statements regarding his symptoms are exaggerated.

In addition to being contradictory, this statement turns the disability analysis on its head. The ALJ must consider plaintiff's symptoms, along with other relevant evidence, in determining plaintiff's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1545(a)(3) ("We will also consider [in determining RFC] descriptions and observations of your limitations from your

11

impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons."); 20 C.F.R. § 1529(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must *then* evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work.") (emphasis added). In the present case, the ALJ did just the opposite: he determined plaintiff's RFC (limited, light) and then rejected any symptoms, as reported by plaintiff, that are incompatible with such work. By doing so, the ALJ effectively disregarded evidence he was required to consider, namely, plaintiff's own testimony regarding the severity of his symptoms.

In the paragraph preceding the one quoted above, the ALJ made the following comments about plaintiff's daily activities:

> The claimant is able to attend to his own personal needs, watch TV, visit with his friend and family members, drive, does occasional laundry tasks, occasional shopping for groceries or gasoline, handle his finances, read and take care of his children when his wife works. The claimant is not significantly limited in his physical and mental abilities as to preclude him from performing basic work activities.

(Tr. 19-20.) Whether this paragraph is meant to discredit plaintiff or bolster the ALJ's RFC finding, or both, is unclear. But in any event the first sentence grossly mischaracterizes the record, and the second sentence is an unwarranted and illogical conclusion based on the first. Plaintiff testified that he cannot shower or dress himself without help from his wife (Tr. 35). He watches "a little TV" during the day when he is not asleep (Tr. 36). When his brother or mother visit, plaintiff can "sit around and talk to them for a few minutes" (Tr. 38) and he "might go to a cookout at my sister's once in a great while" but must sit in a recliner as soon as he gets there (Tr. 39). Plaintiff can drive, but "[n]ot for very long distance, I might be able to drive like a couple of blocks" (Tr. 37). He does

12

no chores around the house (Tr. 38)[5] and "can't even go to the grocery store" (Tr. 39). His testimony was not that he "takes care of his children when his wife works," but that he sees them briefly in the evening (Tr. 37).[6] As noted above, plaintiff also testified that he can sit for at most 5-10 minutes, stand for 5-6 minutes, walk "to the mailbox and back," and climb "maybe two" stairs (Tr. 39-40).

The ALJ's conclusion from this testimony that plaintiff "is not significantly limited in his physical and mental abilities as to preclude him from performing basic work activities" defies belief. Since the ALJ has found that plaintiff has medical conditions which "could reasonably be expected to cause the alleged symptoms" and has articulated no reasonable basis for rejecting plaintiff's testimony regarding those symptoms, plaintiff's testimony stands unrebutted.[7] The vocational expert agreed that if plaintiff's testimony were credited and plaintiff is "off task for two or more hours per day for unscheduled rest periods," there are no jobs plaintiff could perform (Tr. 47).

The second reason the ALJ's decision lacks substantial evidence is that there is a wholesale failure to address the side-effects of plaintiff's many medications. Although the ALJ

---

[5] In his written report, plaintiff indicated he does "laundry sometimes" (Tr. 155).

[6] In his written report plaintiff wrote, "sometimes I take my kids to school" (Tr. 157).

[7] The court is not permitted to make credibility findings and does not intend to do so here. Nonetheless, it is important to note that plaintiff has medically determinable impairments which, as the ALJ has acknowledged, can reasonably be expected to produce painful symptoms. Plaintiff broke his back in the 1994 automobile accident and known painful conditions (e.g., disc bulge, neural foraminal narrowing, lumbar myospasm) have been confirmed objectively. Plaintiff's subjective complaints have been consistent over a period of years, and none of the many physicians who have treated plaintiff have expressed any doubt as to the truthfulness of these complaints. Under these circumstances, it is not surprising that the ALJ's decision omits any reasoned discussion or finding discounting plaintiff's credibility.

13

acknowledged that plaintiff "uses pain medications on a regular basis" (Tr. 16), he failed make any findings regarding the side-effects or include any such findings in his hypothetical questions to the vocational expert. As noted above, the record is replete with references to the various medications plaintiff has taken over the years. *See, e.g.*, Tr. 117, 167, 175-79, 181, 186, 195, 215-19, 231, 263, 277, 290. Dr. Paese noted in September 2006 that plaintiff was "still taking a *significant amount of narcotics* to relieve his discomfort" (Tr. 273) (emphasis added). Plaintiff testified that "I have to sleep a lot because the medication they got me on just, it's I'm so tired all the time" (Tr. 32). Apparently aware of the issue, the ALJ asked: "What, with the morphine and the Vicodin I, sometimes it's, *these are common sense questions* but what are your side effects that you get with those?" (Tr. 32) (emphasis added). Plaintiff responded: "They make me real tired and all I do is sleep" (Tr. 32). Plaintiff testified that after breakfast "I go back to sleep, I rest," gets up at noon and "[t]hen I take my medication and then by at least 2:30, 3:00 I'm back to sleep again and I sleep until about seven or eight at night" (Tr. 36). Plaintiff testified that at about 7:00 PM "I get up long enough to, you know, greet my wife and say hello and she gets ready for work and we eat dinner and then I'm back to sleep by 8:30, 9:00" (Tr. 37). The ALJ is required to consider medication side-effects in evaluating a claimant's RFC. *See White v. Comm'r of Social Sec.*, 312 Fed.Appx. 779, 789-90 (6th Cir. 2009); *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

As with plaintiff's testimony regarding the severity of his pain and his physical limitations, plaintiff's testimony regarding the side-effects of his medications stands unrebutted because the ALJ neglected to consider the issue or make any findings. As noted above, the vocational expert testified that if plaintiff's testimony were credited and he must rest for two or more hours per day, "that would be work preclusive" (Tr. 47). The tiring and sleep-inducing effects of

14

narcotics are well known. *See White*, 312 Fed.Appx. at 790.

For the reasons stated above, the court concludes that the ALJ's decision is not supported by substantial evidence. The only remaining issue is whether the case should be remanded for an award of benefits or for further proceedings.

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

*Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted). In the present case, proof of plaintiff's disability is strong and evidence to the contrary is non-existent. Plaintiff's back pain has an objective, medically documented basis. The ALJ concedes that plaintiff's impairments (lumbar degenerative disc disease and lumbar facet arthritis) "could reasonably be expected to cause the alleged symptoms," and he has offered no reason to reject plaintiff's testimony regarding the severity of his symptoms. As noted, plaintiff testified that his back pain is an "8" or "9" on a ten-point scale and that it prevents him from sitting, standing or walking long enough to do any type of work, and that his pain medications cause him to sleep nearly all day. This testimony is not only unchallenged, as the ALJ made no adverse credibility finding, but fully supported by the medical evidence. On this record, remand for further proceedings would be pointless. Accordingly,

IT IS ORDERED that Magistrate Judge Binder's report and recommendation is

rejected.

IT IS FURTHER ORDERED that this matter is remanded to defendant for an award of benefits.

_s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: December 27, 2010
      Detroit, Michigan